DECISION AND JUDGMENT ENTRY
{¶ 1} James L. Lloyd appeals the Gallipolis Municipal Court decision finding him guilty of driving under the influence and driving left of center. Lloyd contends that his DUI conviction is against the manifest weight of the evidence and that the trial court violated his due process rights when it imposed the judgment and sentence in his absence. Because we cannot find that a manifest miscarriage of justice occurred, but can find that substantial evidence supports the conviction, we disagree that the conviction is against the manifest weight of the evidence. However, the trial court violated Lloyd's fundamental right to be present at all critical stages of his trial when it entered the judgment and sentence in the journal entry without the presence of Lloyd and his counsel. Accordingly, we affirm in part, reverse in part, and remand this matter for further proceedings consistent with this opinion.
 I. {¶ 2} On May 14, 2003, Troopers Robert Jacks and Daniel Stephens were patrolling State Route 233 in Gallia County. While heading westbound on Route 233 at approximately 10:00 P.M., Troopers Jacks and Stephens observed a pickup truck, with its headlights turned off, attempting to make a right turn out of the parking lot of a bar called "the Swamps." As the troopers drove past the parking lot, the driver of the pickup truck put the vehicle in reverse and began backing into the parking lot. Troopers Jacks and Stephens turned their patrol car around, drove past the bar parking lot again, and observed the parked pickup truck with the driver inside the cab. The troopers then continued eastbound on State Route 233 and parked their patrol car. When the pickup truck drove past the patrol car, the troopers began to follow the truck. Trooper Jacks activated the videotape in the patrol car.
 {¶ 3} While following the pickup truck on Route 233, the troopers observed the vehicle weaving in its lane and crossing left of center. When the pickup truck completely drove left of center, the troopers decided to pull the driver over and activated their overhead lights. The driver of the pickup truck did not stop. Without increasing his driving speed, the driver continued eastbound on Route 233 and eventually turned right onto County Road 70. While on County Road 70, the driver stopped his truck in the driveway of the private residence of Chester and Gretta Hale.
 {¶ 4} Troopers Stephens and Jacks observed the driver, Lloyd, exit his vehicle with unsteady feet. They saw that he needed to lean against the truck for support. When they approached Lloyd, they noticed that his eyes were bloodshot and glassy. Trooper Jacks smelled the odor of alcohol coming from Lloyd. Trooper Stephens also smelled the odor of alcohol when he placed Lloyd in the patrol car after they arrested him. Lloyd allowed Trooper Jacks to perform the Horizontal Gaze Nystagmus ("HGN") test. Lloyd failed six out of the six clues for intoxication under the HGN test, and then refused to submit to any further field sobriety tests. The troopers placed Lloyd under arrest and searched his vehicle incident to the arrest. The search of Lloyd's vehicle produced a container of illegal alcohol.
 {¶ 5} The troopers charged Lloyd with driving under the influence in violation of R.C. 4511.19(A)(1) and driving left of center in violation of R.C. 4511.25. Lloyd pled not guilty and waived his right to a jury trial. The court set the trial for July 8, 2003. On July 7, 2003, Lloyd's counsel filed a motion to suppress. The trial judge did not consider the motion because counsel failed to timely file it as required by Crim.R. 12(D).
 {¶ 6} At trial, Troopers Jacks and Stephens testified to the reasons they believed Lloyd drove while impaired. Those reasons included Lloyd's appearance, the odor of alcohol coming from Lloyd's person, the results of the HGN test, Lloyd's erratic driving, and the suspicious behavior they observed in "the Swamps" parking lot. In his defense, Lloyd claimed that the videotape from the patrol car showed that he did not weave his vehicle in its lane and never crossed left of center. Lloyd testified that no one administered the HGN test to him, that he patroned "the Swamps" for dinner but had no alcoholic drinks while there, that he drove perfect, and that the officers were belligerent and argumentative when they pulled him over. Finally, Chester and Gretta Hale testified that they picked Lloyd up from the county jail less than two hours after his arrest and that Lloyd showed no signs of intoxication.
 {¶ 7} The trial court entered a finding of guilty and sentenced Lloyd in its journal entry without Lloyd or his attorney present. For the offense of driving under the influence, the trial court ordered Lloyd to pay a fine of $550 and to serve 180 days in the Gallia County Jail, with 177 days suspended. For the offense of driving left of center, the trial court ordered Lloyd to pay a $25 fine.
 {¶ 8} Lloyd appeals, asserting the following assignments of error: "I. The trial court erred to the substantial prejudice of the Defendant-Appellant by finding the Defendant-Appellant guilty of DUI, as such finding was against the manifest weight of the evidence. II. The trial court erred to the substantial prejudice of the Defendant-Appellant by issuing a written verdict and sentence outside the presence of the Defendant or his counsel, said action constituting a violation of Ohio Criminal Rule 43 and Defendant's Sixth Amendment constitutional rights and corresponding sections of the Ohio Constitution."
 II. {¶ 9} In his first assignment of error, Lloyd contends that his DUI conviction is against the manifest weight of the evidence because the prosecution failed to prove that Trooper Jacks administered the HGN test in strict compliance with standardized procedures. Lloyd further asserts that the videotape recorded from inside the patrol car discounts any evidence that he drove while impaired.
 {¶ 10} In deciding whether a criminal conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences therefrom, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Thornburgh (Sept. 29, 1997), Lawrence App. No. 97CA21, 1997 WL 607521, citing Statev. Garrow (1995), 103 Ohio App.3d 368, 370-71.
 {¶ 11} While an assignment of error based on the manifest weight of the evidence permits the appellate court to consider the credibility of witnesses, that power is not absolute. The weight to be given to evidence and decisions regarding the credibility of witnesses are still issues primarily placed on the trier of fact. State v. Murphy, Washington App. No. 03CA12, 2003-Ohio-4939 at ¶ 15, citing State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is in the best position to gauge the credibility of witnesses and the weight of evidence as it is presented at trial. Murphy at ¶ 15. Appellate courts are cautioned to only overrule criminal convictions on the basis of the manifest weight of the evidence in "exceptional case[s] in which the evidence weighs heavily against the conviction." Martin at 175. In general, "a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." Murphy at ¶ 15, citing State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 12} In order to sustain a conviction under R.C.4511.16(A)(1), the prosecution must prove that: (1) the defendant operated a motor vehicle within the state and (2) at the time of such operation, the defendant was under the influence of alcohol. A driver of a motor vehicle is considered "under the influence of alcohol" when his "physical and mental ability to act and react are altered from the normal because of the consumption of alcohol." State v. Hardy (1971), 28 Ohio St.2d 89, 91.
 {¶ 13} Lloyd asserts that the State failed to meet its burden of proof with regard to the validity of the HGN test results by not eliciting testimony from Trooper Jacks regarding the exact procedures he used in administering the test to Lloyd and whether those procedures were in strict compliance with standard procedures for HGN testing. For support, Lloyd relies on the holding in State v. Homan (2000), 89 Ohio St.3d 421,2000-Ohio-212, which provides that field sobriety tests "must be administered in strict compliance with standardized procedures."Homan at 427. However, Homan involved a trial court's denial of a motion to suppress evidence taken as a result of a vehicle stop. Id. at 423. According to the actual holding of Homan, if a field sobriety test is not administered in strict compliance with standardized procedures, the trial court must grant a defendant's timely motion to suppress the results at the probable cause hearing. Id. at 427.
 {¶ 14} Here, Lloyd's attorney filed an untimely motion to suppress the HGN test results on the basis that Trooper Jacks failed to strictly comply with standardized procedures in administering the HGN test to Lloyd. The court did not consider the merits of this motion because counsel filed it the day before trial in violation of Crim.R. 12(D). We concluded that the trial court acted properly in declining to consider the motion to suppress because it was not timely.
 {¶ 15} The testimony of the prosecution witnesses and defense witnesses conflicted. Troopers Jacks and Stephens testified that Lloyd's appearance, actions, and conduct were consistent with a person driving while impaired. Lloyd testified that he had consumed no alcoholic drinks on the evening in question. Chester and Gretta Hale testified that when they collected Lloyd from jail less than two hours after his arrest, he showed no signs of intoxication. The trier of fact had the authority to determine whose testimony was credible in this case. After reviewing the record, it is apparent that the trial court found more credibility in the testimony of the prosecution witnesses. Nothing in the record before this court suggests that the trial court clearly lost its way so as to create a manifest miscarriage of justice when weighing the evidence and credibility of the witnesses.
 {¶ 16} Lloyd also claims that the patrol car videotape proves that his car was not weaving in its lane or crossing left of center. However, at trial, both troopers testified that there is a delay between the activation of the recorder and the time that it actually begins recording. The troopers also testified as to what they observed from the patrol car while following Lloyd in his truck. Again, it appears that the trial court found the testimony of the troopers credible regarding what they observed prior to the videotape actually recording or that the court found that the videotape actually showed erratic driving. Thus, we find that the record before this court does not indicate that the trial court clearly lost its way so as to create a manifest miscarriage of justice. We find that substantial evidence supports the court's guilty finding.
 {¶ 17} For the above stated reasons, Lloyd's first assignment of error has no merit.
 III. {¶ 18} In his second assignment of error, Lloyd asserts that the trial court erred when it recorded his conviction and sentence in the journal entry without the presence of the defendant and/or his attorney. The State argues that the general right of a criminal defendant to be present when he is convicted and sentenced does not apply in the context of bench trials.
 {¶ 19} Crim.R. 43(A) provides that: "[t]he defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules * * *." Pursuant to Crim.R. 43(B), a defendant may be excluded from the courtroom during his trial because of his disruptive conduct. The Supreme Court of Ohio has ruled that it is reversible error to violate a defendant's right to be present when he is found guilty and sentenced. State v. Welch (1978),53 Ohio St.2d 47, 47-48. See also, State v. Nero (1998),125 Ohio App.3d 529, 531 (holding that Crim.R. 43(A) requires the defendant be present when sentence is imposed); State v.Sutherlin (1996), 111 Ohio App.3d 287, 293 (holding that Crim.R. 43(A) provides defendants with an absolute right to be present when sentenced. The right "is so fundamental that [it] cannot be removed except by a voluntary, intelligent, and express waiver."). In Welch, the court found that the conviction and sentencing at issue were recorded in a form journal entry and that the transcript in the certified record proved that the defendant was not present at the time the trial court found her guilty and imposed sentence. Welch at 47-48. As a result, the court remanded the case with instructions that the lower court vacate the journal entry and that it resentence the defendant in accordance with the law. Welch at 48.
 {¶ 20} Here, the court imposed Lloyd's conviction and sentence in violation of Crim.R. 43(A). As in Welch, the journal entry used here was a form entry. The transcript in the record certified to this court contains no evidence that the trial court rendered the judgment of guilty and imposed the sentence in the presence of Lloyd. Accordingly, Lloyd's second assignment of error has merit.
 IV. {¶ 21} In conclusion, we overrule Lloyd's first assignment of error because his conviction for driving under the influence is not against the manifest weight of the evidence. However, we sustain Lloyd's second assignment of error because the trial court violated Lloyd's Crim.R. 43(A) right to be present at the time of his conviction and sentencing.
 {¶ 22} Accordingly, we affirm in part, reverse in part, and remand this matter for further proceedings consistent with this opinion.
Judgment Affirmed in Part, Reversed in Part and CauseRemanded.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part and that the cause be remanded for further proceedings. It is further ordered that appellant is to recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be issued out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Harsha, J.: Concur in Judgment and Opinion.